# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | | |
|---|---|---|
| **ELIZABETH MATTSON,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 3:24-cv-00193** |
| | ) | **Judge Aleta A. Trauger** |
| **LANDMARK RECOVERY OF** | ) | |
| **LOUISVILLE, LLC,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM

Before the court is the Motion to Dismiss Plaintiff's Amended Complaint or, In the Alternative, to Stay, filed along with a supporting Memorandum of law, by defendant Landmark Recovery of Louisville, LLC ("Landmark"). (Doc. Nos. 12, 13.) Plaintiff Elizabeth Mattson has filed a Response in Opposition (Doc. No. 14) and, following the defendant's Reply (Doc. No. 15), a Notice of Filing with attached exhibits confirming the withdrawal of her Amended Charge Against Employer filed with the National Labor Relations Board ("NLRB").

For the reasons set forth herein, the defendant's motion will be denied.

## I.      FACTS AND PROCEDURAL HISTORY

Mattson filed her original Complaint on January 22, 2024 in the Chancery Court for Davidson County, Tennessee, asserting state law claims against Landmark for breach of contract, promissory estoppel, and post-employment/post-agreement retaliation in violation of the Tennessee Human Rights Act ("THRA"). (Doc. No. 1-1.) Her claims arise from the defendant's alleged breach or revocation of a pre-suit settlement agreement ("Settlement Agreement") relating to sexual harassment claims that Mattson had previously lodged against her employer. The original Complaint also expressly alleged that any contractual limitation on the plaintiff's ability to discuss

the Settlement Agreement was barred by the National Labor Relations Act ("NLRA"), 29 U.S.C. § 151, *et seq.*, pursuant to which a defendant employer may only preclude an employee from discussing the "amounts" of a settlement agreement. (Doc. No. 1-1 ¶ 27.) The original Complaint also asserted that the parties agreed that "[c]onfidentiality and the like" were to be "in accord with the NLRA." (*Id.* ¶ 28.)

Landmark removed the case to this court on February 20, 2024 under 28 U.S.C. §§ 1331, 1441, and 1446, asserting federal question jurisdiction. (Doc. No. 1.) In removing on the basis of federal question jurisdiction, the defendant relied on the plaintiff's references to the NLRA and characterized the Complaint as alleging that the plaintiff's comments to any colleagues about the Settlement Agreement were protected by the NLRA and that any contractual obligation to keep the terms of the agreement confidential were unenforceable under the NLRA. (Doc. No. 1, at 7–8.) In addition, Landmark construed the Complaint as "implicat[ing] significant and substantial federal issues," including:

(1) whether the plaintiff, as a supervisor, was an individual protected by the NLRA;

(2) if so, whether she went beyond the scope of activity protected by the NLRA by discussing a "term" of the Settlement Agreement (her resignation) with her colleagues; and

(3) whether she went beyond the scope of activity protected by the NLRA by disparaging the alleged harasser, Landmark's Chairman.

(*See id.* ¶¶ 30, 43.)

According to Landmark, the NLRB has recently taken the position that severance agreements containing overly broad non-disparagement or confidentiality clauses violate the rights of employees under § 7 of the NLRA, 29 U.S.C. § 157, and that this position is new, hotly contested, and still largely untested by the courts. (*Id.* ¶¶ 32–37.) Landmark asserts that, because of these issues, the plaintiff's claims, though framed as state law claims, actually "arise under"

federal law, insofar as the claims involve a substantial question of federal law and their resolution will require interpretation of federal law. (*Id.* ¶¶ 39–46.)

Landmark also points out that the plaintiff had filed a Charge Against Employer with the NLRB on January 29, 2024, a copy of which is attached to the Notice of Removal. (Doc. No. 1-4.) The Charge alleged that the employer (Landmark) interfered with employee rights under § 7 of the NLRA, on or before January 12, 2024, by "interrogating employees about their protected concerted activities and/or the activities of other current and former employees" and by "instructing or indicating to employees that they could not discuss certain working conditions." (*Id.* at 2.) In addition, the Charge alleged that, "[o]n about January 16, 2024," the employer had interfered with its employees' exercise of rights protected by § 7 by "enforcing or attempting to enforce a separation agreement containing overly broad non-disparagement and confidentiality provisions" and had discriminated against Mattson by "breaching and withdrawing [sic] her separation agreement in retaliation for her engaging in protected conduct and/or union activity, specifically for discussing working conditions with other employees." (*Id.*)

Essentially contemporaneously with the removal, Landmark filed a Motion to Dismiss the original Complaint for lack of subject-matter jurisdiction, on the basis that the plaintiff's claims were completely preempted by the NLRA and, alternatively, under Rule 12(b)(6), for failure to state a claim. (Doc. No. 7.) Mattson filed a Response to the Motion to Dismiss (Doc. No. 10), stating that she was amending her NLRB Charge to omit reference to any claims that are not preempted by the NLRA. She also filed a First Amended Complaint ("FAC") (Doc. No. 9) that omits the contentions (1) that Landmark's revocation of the settlement agreement violated the NLRA and (2) that the NLRA precluded Landmark from requiring Mattson to maintain confidentiality and not disparage Landmark's Chairman. Mattson did not move to remand or

dispute that the claims as framed in the original Complaint were preempted.

The Motion to Dismiss the original Complaint was denied as moot (Doc. No. 11), and Landmark promptly filed the now-pending Motion to Dismiss or Stay the FAC. Landmark argues that the claims in the FAC are still preempted under *San Diego Building Trades Council v. Garmon*, 359 U.S. 236 (1959). Landmark notes that, at the time of filing, it had not yet been served with an Amended Charge, but it nonetheless maintains that "any such amendments will not negate *Garmon* preemption," so long as the "revocation of the Settlement Agreement" "underlies both this litigation and the charge." (Doc. No. 13, at 2; *see id.* at 13 ("Regardless of what an amended charge may or may not say, by initiating proceedings before the NLRB, she has indisputably put the revocation of the Settlement Agreement within that agency's investigative and enforcement authority.").) Landmark argues that, even if the plaintiff amends the Charge to include only reference to the employee interviews that took place on January 12, 2024, the action on which the plaintiff's claims are premised—the revocation/breach of the Settlement Agreement—"remains 'arguably subject' to the NLRA," making the claims arising from that action preempted under *Garmon*." (*Id.* at 15 (quoting *Lewis v. Whirlpool Corp.*, 630 F.3d 484, 487 (6th Cir. 2011)).) It asks in the alternative that this case be stayed under the doctrine of "primary jurisdiction," pending resolution of the Unfair Labor Practice Charge. (*Id.* at 16.)

In her Response, Mattson asserts that she filed an Amended Charge that only sets forth claims on behalf of other, non-supervisory employees for interferences with those employees' rights under § 7 of the NLRA and that the Amended Charge withdrew "any allegations that could be construed as claims for breach of contract, promissory estoppel, unjust enrichment, and retaliation for reporting sexual harassment," which are not preempted by the NLRA or within the jurisdiction of the NLRB. (Doc. No. 14, at 4.) She also states that the Amended Complaint filed in

this court is not based on the same facts that support the Amended Charge, as the FAC contains claims related only to the defendant's repudiation of the Settlement Agreement, which arise under state law only.[1] These claims, she maintains, are not "arguably subject" to the NRLA. (*Id.* at 8.) She also argues that a stay is not required, because the court's exercise of jurisdiction over her state law and Title VII claims in this case would not pose a "risk of interfering with the uniform national labor policy." (*Id.* at 12.) She further argues that the defendant should not be able to argue to the NLRB that she is a supervisory employee not protected by the NLRA and to argue in this court that the NLRB must resolve her claims. (*Id.* at 4–5.)

The defendant's Reply acknowledges that the procedural posture of this case raises a novel question: where the original pleading was "squarely preempted under *Garmon*," does *Garmon* preemption still apply when the plaintiff amends both the pleading and the unfair labor charge but the "conduct complained of in the amended complaint remain[s] the same"? (Doc. No. 15, at 2.) The defendant asserts that, "[a]rtful pleading aside, *Garmon* preemption still exists," because preemption depends upon the nature of the conduct rather than the way the claim is pleaded, and the conduct in question here is still "arguably subject to § 7" of the NLRA. (*Id.* (quoting *Garmon*, 359 U.S. at 245).) It argues that the caselaw the plaintiff relies on actually supports the defendant's position on preemption. It posits that the NLRB is unlikely to simply accept Landmark's insistence that Mattson qualifies as a supervisory employee and may well disagree with that assessment and, in doing so, would investigate whether the revocation of the Settlement Agreement violated the NLRA. And it insists that the plaintiff has failed to address the issue of primary jurisdiction, which

---

[1] Mattson states that she filed a Charge of Discrimination with the U.S. Equal Opportunity Commission ("EEOC") in March 2024 and intends to seek leave to amend her pleading to include a claim under Title VII, once she receives her Notice of Right to Sue from the EEOC. (Doc. No. 14, at 10 n.9.)

would require that the court stay this case if it does not dismiss it altogether.

As indicated above, following the filing of the defendant's Reply, Mattson submitted a Notice of Filing, to which is attached a series of communications between plaintiff's counsel and NLRB representatives. These documents show that (1) NLRB Investigator David Watkins assured plaintiff's counsel in an email dated April 26, 2024 that, "when you filed the amended charge, it supersedes the initial charge" and that "[a]nything not covered in the amended charge will not be investigated"; (2) later the same day, plaintiff's counsel directed Watkins to withdraw the amended charge and to send "confirmation that both charges have been withdrawn"; and (3) on May 2, 2024, counsel received a letter signed by NLRB Regional Director Lisa Henderson providing notice that she had "approved the withdrawal of the charge" in this matter. (Doc. No. 16-1.)

## II.    DISCUSSION

In *San Diego Building Trades Council v. Garmon*, the Supreme Court held that, "[w]hen an activity is arguably subject to § 7" of the NLRA, "the States as well as the federal courts must defer to the exclusive competence of the National Labor Relations Board." 359 U.S. at 245. This holding has become known as the *Garmon* rule or *Garmon* preemption. "The *Garmon* rule prevents States not only from setting forth standards of conduct inconsistent with the substantive requirements of the NLRA, but also from providing their own regulatory or judicial remedies for conduct prohibited or arguably prohibited by the Act." *Wis. Dep't of Indus., Labor & Human Rels. v. Gould, Inc.*, 475 U.S. 282, 286 (1986).

Thus, for example, in *Platt v. Jack Cooper Transport Co.*, 959 F.2d 91 (8th Cir. 1992), after the plaintiff-employee's employment was terminated, the employee's union instituted a grievance for him under the union's collective bargaining agreement with the employer, asserting that the employee was not terminated for cause. After the grievance hearing, the employee's discharge was upheld under the collective bargaining agreement. The employee then filed a charge

with the NLRB, alleging that his employer fired him because of union and protected concerted activities. The NLRB Regional Director declined to issue a complaint, and the NLRB General Counsel denied the appeal, finding insufficient evidence to establish a connection between the union activities and the discharge. The employee then filed suit in federal district court, contending that his discharge violated a California law that prohibited discharge for making safety complaints. The district court applied NLRA preemption because the employee's safety complaints were covered by, or arguably covered by, various provisions of the collective bargaining agreement, such that the resolution of the state law claims would require interpretation of the collective bargaining agreement. *Id.* at 93.

The Eighth Circuit affirmed, stating that "[p]reemption turns on the nature of the conduct in question, not on the way it is pleaded." *Id.* at 94. The court noted in particular that, although the plaintiff's lawsuit alleged that he was fired for making safety complaints, these same safety complaints were part of the "protected concerted activities" and "union activities" that he alleged as the cause of his termination in his NLRB charge. *Id.* In addition, the term "protected concerted activity" under § 7 includes an employee's good faith invocation of rights provided in his collective bargaining agreement, *id.* (citing *NLRB v. City Disposal Sys., Inc.*, 465 U.S. 822, 841 (1984)), and the district court expressly construed the collective bargaining agreement as protecting the plaintiff's right to make safety complaints. Because the court had "no doubt" that California had a strong interest in protecting workers who make safety complaints, the "critical inquiry for *Garmon* preemption purposes [was] 'whether the controversy presented to the state court is identical to . . . that which could have been, but was not, presented to the [NLRB]." *Id.* (quoting *Sears, Roebuck & Co. v. San Diego County Dist. Council of Carpenters*, 436 U.S. 180, 197 (1978)) (second alteration in original). Because it was clear that the plaintiff *could have* presented the same exact

claim (that he was terminated for making safety complaints) in his NLRB charge, and because the plaintiff had already unsuccessfully sought relief from the NLRB for effectively the same conduct, *Garmon* preemption applied. *Id.* at 95.

Conversely, in *Zavadil v. Alcoa Extrusions, Inc.*, 437 F. Supp. 2d 1068 (D.S.D. 2006), a case cited and relied upon by both parties here, the plaintiff filed a federal complaint asserting a breach of contract claim based on his termination in violation of the defendant's Peer Review Policy. *Id.* at 1071. The plaintiff had also filed an unfair labor practices charge with the NLRB, alleging that he had been discharged for "not being sufficiently anti-union as a shift supervisor." *Id.* at 1073. The NLRB advised him that, as a supervisor, he was not entitled to the same protections as non-supervisory employees but that "it would be unlawful for his employer to discharge him for refusing to do an act which violates the labor law if he were requested to do that act by his employer." *Id.* The plaintiff was also advised that the Regional Director had found insufficient evidence to support his claim of termination in violation of the law. The plaintiff subsequently withdrew the charge from the NLRB. *Id.*

The court rejected the defendant's contention that the case was controlled by *Platt*, because "the issue presented by Plaintiff to the National Labor Relations Board is not the same issue presented by Plaintiff in this lawsuit." *Id.* at 1074. As the court noted, to determine whether a state law claim is preempted by the NLRA,

> the 'critical inquiry . . . is not whether the State is enforcing a law relating specifically to labor relations or one of general application but whether the controversy presented . . . is identical to . . . or different from . . . that which could have been, but was not, presented to the Labor Board.' Although the analysis of a state law claim may involve attention to the same factual considerations as a charge before the National Labor Relations Board, such parallelism does not require *Garmon* preemption. A state breach of contract claim is not preempted if the conduct involved is of only peripheral concern to the National Labor Relations Act and if permitting the state breach of contract claim would not frustrate any policy of the federal labor laws.

*Id.* at 1074–75 (quoting *Sears, Roebuck*, 436 U.S. at 197; citing *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 408 (1988), and *Belknap, Inc. v. Hale*, 463 U.S. 491 (1983)).

More specifically, the plaintiff's one-count complaint in federal court asserted a breach of contract claim, raising only the question of whether the defendant breached its agreement with the plaintiff when, after terminating the plaintiff's employment, it refused to allow him to utilize its Peer Review Policy. The court found that this issue was "different from the charge presented by Plaintiff to the National Labor Relations Board"—that he was fired for not being sufficiently anti-union—"and is not of the nature of a claim that could have been presented to the National Labor Relations Board." *Id.* at 1075. Even though the breach of contract claim "undeniably involves attention to some of the same factual considerations presented in the charge to the National Labor Relations Board," the claim did not require the plaintiff to show that his termination was "in any way intended to interfere with, restrain or coerce non-supervisory employees in the exercise of their organizational rights." *Id.* Accordingly, the court found that "[p]ermitting the state breach of contract claim in this case will not frustrate any policy of the federal labor laws" and, therefore, that "the *Garmon* preemption rule does not apply to this case." *Id.*; *accord Flanigan v. Westrock Services, LLC*, 704 F. Supp. 3d 807 (N.D. Ohio 2023) (finding that the plaintiff's state law retaliation claims were not preempted, given that the state had a "significant interest in protecting employees" who have alleged sex discrimination from retaliation and that the plaintiff's "retaliation claim is not identical to a claim that could be raised before the [NLRB]," as that body had "jurisdiction over labor issues," and "Ohio's anti-retaliation law does not cover labor issues").

The case now before this court is much more similar to *Zavadil* and *Flanigan* than *Platt*. As an initial matter, the court notes that the FAC in this case supersedes for all purposes the original pleading. *Green v. Mason*, 504 F. Supp. 3d 813, 826 (S.D. Ohio 2020) (citing *Ky. Press Ass'n, Inc.*

*v. Kentucky*, 355 F. Supp. 2d 853, 857 (E.D. Ky. 2005)). Accordingly, whether the original Complaint might have been preempted is of no moment. The FAC, as the operative pleading, alleges that the plaintiff entered into a Settlement Agreement with Landmark to resolve prior claims of sexual harassment by the company's Chairman. The principle provisions of the agreement were that the plaintiff would resign from Landmark effective immediately, on January 5, 2024, in exchange for monetary consideration. (*See* Doc. No. 9 ¶¶ 48–49.) The Settlement Agreement had not been reduced to writing as of the plaintiff's final day with the company; Landmark's counsel emailed the first draft to plaintiff's counsel on January 6, 2024. (*Id.* ¶ 52.) Following some revisions by both parties, a final version of the Settlement Agreement was approved on January 8, 2024 and signed on January 9, 2024. Under the agreement, Landmark had ten days from the date of the plaintiff's signing to tender the agreed-upon consideration. (*Id.* ¶¶ 53–59.) One week later, counsel for Landmark notified Mattson's counsel that Landmark would not honor its obligations, stating, "[W]e have no deal." (*Id.* ¶ 61.) The purported basis for Landmark's repudiation of the Settlement Agreement was that Mattson had allegedly discussed the sexual harassment she had experienced with other Landmark employees on or before her last day of employment, January 5, 2024. (*Id.* ¶ 62.) Mattson maintains that the Settlement Agreement does not preclude her from discussing with others the sexual harassment she had experienced and, instead, only precludes her from discussing the "terms and amounts of this Agreement" with others, which she denies doing. (*Id.* ¶¶ 64–66.) She specifically alleges that any effort by the defendant to preclude her from "opposing, reporting, refusing to remain silent about, or filing a Charge of Discrimination with respect to" the sexual harassment she allegedly experienced would violate Title VII and the THRA and would not constitute grounds for the defendant's breach of the

Settlement Agreement, and she denies committing any material breach of the agreement.[2] (*Id.* ¶¶ 64, 76.)

Based on these allegations, the FAC asserts a breach of contract claim, the elements of which are that (1) Landmark promised to provide Mattson consideration as set forth in the Settlement Agreement if she resigned her employment on January 5, 2024 and signed the release of claims accompanying the agreement; (2) Mattson accepted the offer, resigned her employment, and signed and returned the release of claims on January 9, 2024; and (3) on January 16, 2024, Landmark breached its obligations under the Settlement Agreement by affirmatively refusing to pay her the consideration required by the agreement. (Doc. No. 9 ¶¶ 107–09.) Additionally or in the alternative, the FAC asserts a claim for promissory estoppel, the elements of which, as pleaded, are essentially the same as those asserted for the breach of contract claim, plus the element of reliance. (*Id.* ¶¶ 111–13.)

Finally, the FAC asserts a retaliation claim under the THRA, asserting that Mattson engaged in protected conduct when she reported the sexual harassment by Landmark's Chairman; that she was subjected to a materially adverse action when, after she accepted Landmark's offer of monetary consideration in exchange for her resignation and signing a release, Landmark reneged on its promises in retaliation for her having engaged in activity protected by the THRA—reporting and refusing to remain silent about sexual harassment—in violation of the THRA.

---

[2] She also alleges that her alleged harasser, the Chairman of Landmark, and his son, Landmark's CEO, discussed her complaints of sexual harassment with numerous other employees and agents of Landmark, as a result of which "numerous current and former agents and employees of Defendant and others were aware of and had discussed or heard facts related to [Mattson's allegations] in October, November, and December 2023—well before Defendant contends she discussed the sexual harassment with other agents or employees on or before January 5, 2024." (Doc. No. 9 ¶¶ 72–75.)

As framed, these claims are not preempted under *Garmon*. First, the state of Tennessee has a significant interest in the enforcement of contracts entered into in Tennessee, intended to be performed in Tennessee, by and between citizens of Tennessee, as well as a significant interest both in protecting employees from sexual harassment and, by extension, in protecting from retaliation those employees who report sexual harassment. *Accord Zavadil*, 437 F. Supp. 2d 1068 at 1074–75; *Flanigan*, 704 F. Supp. 3d at 819.

And second, the claims in the FAC are not identical to any claims that could be raised before the NLRB. As the court in *Flanigan* observed, the NLRB has jurisdiction over labor issues. The contract (and promises) at issue here do not involve a collective bargaining agreement, the interpretation of a collective bargaining agreement, or any issue that involves the application or interpretation of the NLRA. It is an action for breach of a contract to resolve allegations of sexual harassment that would fall within the purview of Title VII and the THRA. The plaintiff could not have brought this particular breach of contract claim before the NLRB, and resolution of the plaintiff's breach of contract claim by this court would "entail 'little risk' of interfering with the uniform national labor policy." *Nw. Ohio Adm'rs, Inc. v. Walcher & Fox, Inc.*, 270 F.3d 1018, 1027 (6th Cir. 2001) (quoting *Sears, Roebuck*, 436 U.S. at 196). Likewise, the plaintiff could not have brought a THRA retaliation claim before the NLRB. The THRA prohibits employment discrimination based on protected characteristics—race, color, religion, sex, age, and national origin. See Tenn. Code Ann. § 4-21-401(a)(1). It does not touch on labor issues. And, to the extent the plaintiff could have (and initially did, though she withdrew the claim without exhausting it) brought a claim asserting that the Settlement Agreement violated the NLRA, that is not a claim she now pursues. Even though the breach of contract claim she does pursue "undeniably involves attention to some of the same factual considerations" she presented in her original NLRB Charge,"

her claim in this court will not require Mattson to show that the breach of contract was "in any way intended to interfere with, restrain or coerce non-supervisory employees in the exercise of their organizational rights." *Zavadil*, 437 F. Supp. 2d at 1075.

In short, because there is no preemption, there is no basis for dismissal of the FAC under *Garmon*. Moreover, because the underlying labor Charge has been withdrawn altogether, there is no "primary jurisdiction" basis for staying this case.

## III.    CONCLUSION

Landmark's Motion to Dismiss Plaintiff's Amended Complaint or, In the Alternative, to Stay (Doc. No. 12) will be denied.

An appropriate Order is filed herewith.

_____
ALETA A. TRAUGER
United States District Judge